Case 15-1175, USA v. Erie Adams, oral argument, 15 minutes per side. Katie Steffes will be the appellant. Good morning, your honors. May it please the court, Katie Steffes here on behalf of defendant appellant Erie Adams. I am reserving 5 minutes per rebuttal. Thank you. Please proceed. Murder. When one hears that word, it is almost impossible to ignore. That is why the criminal justice system is so important in ensuring the defendants that are charged with crimes are afforded due process of the law throughout their entire trial. This ensures that they are neither convicted or sentenced for a crime for which they were not charged. Unfortunately, in this case, that appears to be what happened to Mr. Adams. Mr. Adams, as you know, was convicted of several drug crimes as well as possession of firearms charges. Why would you say that the stray reference to murder was what convicted him here? We've got Conyers' testimony, we have your client's own statements that he made to the police, we've got the cell phone records. It seems like there's a lot of evidence that's far, far more significant than the stray comment elicited by your client's counsel. There are many constitutional deficiencies that led to the introduction of evidence that we feel should not have been introduced. First of all, you mentioned what about the statements from the co-conspirators, I think is what you were hinting on. You know, that we raised in our brief that that was improperly admitted by the trial court. And the reason why we argue that is because, as you know, there has to be independent proof of a conspiracy outside of the co-conspirator statements. In this case, what the independent evidence suggested was that there was more of a buyer-seller relationship between Mr. Conyers and Mr. Adams. And so we feel that it was a far cry from actual proof of some further drug conspiracy. And that those statements by the co-conspirators should not have been admitted by the trial court. More importantly, however, when it goes to Mr. Adams' statements that were admitted, because the trial court found that he had materially breached the Kastgar Agreement that he had entered into previously, that, we feel, was improperly admitted because the statements that were allegedly in breach of that agreement were gained through a polygraph examination. During that polygraph examination, Mr. Adams was asked specifically two questions relating only to the death of Mr. Conyers. He was not asked during that polygraph about any of the drug charges, anything relating to the drug investigation, in fact. The Kastgar proffer interview, however, went further than that. They did ask him about his involvement in the drugs. He gave them information relating to that. At no point was there any suggestion by anyone in the government that he had lied about those statements. Now, of course, you can take that a little bit further and say, well, because there was deception found at the polygraph relating to the death of Mr. Conyers, then he must inherently be somebody that lies. However, that begs the question of whether the polygraph results were trustworthy. Can we rely on that? Did you challenge the trustworthiness of the polygraph? His trial counsel had previously, and then... He did? Yeah, I think in the briefs that they had submitted, they initially had challenged that, you know, the polygraph, how do you know what deception detected means? At trial, they called one of the witnesses that had... Or at one of the pretrial hearings, they had called one of the detectives that was there. It was not the detective that had given the polygraph, but one of them that had talked to the polygrapher and said that, well, that means that he had found to have failed the polygraph. Okay, well, I mean, I thought it was accepted that he had failed the polygraph. I didn't think there was a challenge below as to that. Yeah. If there was, I would think that it may be an evidentiary hearing. Did he really fail it or not? Right. But there wasn't such a request. Yeah, no, there was not a request as to that. Well, should there be? I mean, if that is the issue of whether he actually failed it or not, I mean, that's an evidentiary question. Well, that's an evidentiary question.  The agreement was that he had to pass it, right? Yes, that he was required to take a polygraph exam and pass it. It was two conditions. Yes. He had to testify truthfully and had to pass the polygraph. Well, he failed the polygraph. Yes. So... Yes, and so the question, of course, is, is that a material breach of the agreement then? A material breach? No, it's just a breach of the agreement, isn't it? I mean, it's clear that it's a breach. It's a breach of the agreement, certainly. But does it go... If he breaches the agreement, why isn't the government free to then do what the agreement says they can do, which is use the information? Right. But the question is... It's a contract. Right, it's a contract. But is that, were his statements a material breach of that agreement? And our argument is no. What Judge Gershman is asking is why does the breach have to be material? Because if that's the case, I mean, let's assume that he went up and said that his name was Joe Schmo, and then at the polygraph examination he says it's Erie Adams. Well... Okay, I mean, that's... He could form the agreement any way he wanted to. I mean, this is a contract. Yes. And the way he agreed was if I fail the polygraph, the fouling happens. And that's the way they, and he didn't say if I fail it based upon a material misrepresentation or for the fouling conditions or all this other stuff. It was just if I fail it. And that's what happened. Yeah. So, I mean, that's kind of the end of it, isn't it? Our argument is no, because we... You want to read into it has to be a material misrepresentation. Right, that it has to be a material representation as to the investigation that he's charged with. Okay, I want to get back to, you started, I'm sorry. If I could interrupt just for a second. You're adding words to the agreement. Let's assume that the breach has to be material. It's not the matters under investigation that he's charged with. No, that's not in the agreement. That's what you just said. That is what I said. It said complete and truthful statement of his knowledge of and role in the matters under investigation. There was never any doubt that they were also investigating the murder of Conyers. Your client knew that. Yes. So he enters into agreement knowing he's going to be or could be asked about the murder, and then he's found to have lied. It's just hard to find out how you win on that one without adding words to the agreement or changing the words in the agreement. Yes, understand. Maybe we should talk about something else. Fair enough. I'd like to talk about how you started your argument. You said about when the jury is told that there has been a murder, it's hard to put it out of their mind. I wasn't aware that the jury was told that there was a murder. Okay, so at trial what happened was the government called one of the detectives that was at the proffer interview, a homicide investigation. Homicide detective. Yes, homicide detective. And what happened was, okay, so he's identified as that during the government's case in chief. There are many other detectives available, including narcotics detectives that they could have called to get this information in, but they chose a homicide detective. They get through the direct examination. During cross-examination, my client's trial attorney had started asking him if he recalled some things about the narcotics that my client had been involved with. And his statement went something like this. No, not something. What did he say? He said that... Page 67. Middle of the page. Yeah, they asked if he had any customers, if he recalled him having any customers. And he said, no, it still doesn't because I wasn't there for the dope thing. I'm there for the homicide thing. Mr. Tyrone Conyers is dead. When did he say there was a murder? He's a homicide detective. And he didn't say specifically that there was a murder. I thought you told me he did. No, that was my argument. I'm there for the homicide. Right, for the homicide. Homicide is not necessarily a murder, is it? Well, that's true. But our argument is that it's fairly clear to the jury. Homicide is illegal death. It could be manslaughter. Yes, it could be. But that's not what he's charged with. That's not what he's on trial for, though. You know, it doesn't mean murder, right? Manslaughter, though. He's not charged with manslaughter. He's not even tried for manslaughter. Okay, so, I mean, the way you said this was shocking because they're told there were murders. Well, he's not. They're told that Conyers is dead. And there's a homicide detective there to investigate, basically. And that is not as prejudicial as telling the jury there is a murder. That's all, I think. Well, you also have to, don't you, infer that the jury then You have to argue that the jury infers that the police believe that he murdered Conyers. Now, that may be in fact what they believe, but that isn't what this says. He's investigating a murder. Conyers is dead. It doesn't say that this guy killed him or maybe he was a witness, maybe he knows something about it. We just don't know. So why is that so prejudicial? Yeah, I think that that information that's given to the jury, what they glean from that is that obviously Mr. Adams is a really bad guy. If I was sitting on a jury, that's what I would be thinking. There's a homicide detective that's investigating here. Mr. Conyers is dead. We've got Mr. Adams on trial for drug charges, conspiracy to commit drug charges, firearms offenses. I think that's pretty prejudicial to him. How about somebody else doing the killing rather than your client? I mean, isn't that? But those statements the government had agreed weren't even going to be introduced. So why was a homicide detective even allowed to be called? We feel that that was why the trial court erred in granting a mistrial here. I don't think a limiting instruction is enough to cure that prejudice. Well, the jury is presumed to follow the limiting instruction, are they not? They are, except that where there is such, where the jury cannot, I mean, even though they're supposed to follow that, that's still in the back of their mind. They can't get that out of their mind if they've heard it. No limiting instruction is going to cure that defect. All right, thank you. You'll have your rebuttal. May it please the Court, Andrew Goetz for the United States. The district court here did not abuse its discretion in denying Adams' motion for a mistrial based on one unprompted reference to Tyrone Conyers' death. Judge Griffin, you asked about the language of the comment, whether that could be interpreted both ways. It could. I mean, even if you assume that the reference to homicide and the reference to Tyrone Conyers' death implies that he was killed or murdered, it still doesn't imply that Adams is the suspect. It could just as easily imply that he's asking Adams questions about someone else who might be the suspect. That's particularly true here because the jury didn't have a murder charge before it or an obstruction charge before it. They had six different charges. None of those dealt with the death of Tyrone Conyers. And here, every single factor that this Court considers  favors the district court's ruling. The first two factors are whether it came in response to the government's questioning and whether this comment was solicited. It didn't come in response to the government's questioning. It came during cross-examination. So those first two factors automatically favor the government here. There was also a limiting instruction immediately after that remark occurred. That limiting instruction appears on page 1389. The district court actually gave that instruction twice, twice asked the jurors whether they agreed to follow it, and then individually polled each juror to make sure that each juror would follow it. That's important not only because of the presence of a limiting instruction, but it shows why the standard of review here is abuse of discretion. The district court is in the best opportunity, best position, to view how the jurors react to that limiting instruction, whether they're nodding, what the look on their face is, whether they look like they're going to agree to follow it, or whether they look scared for some reason. Those are things that don't translate to a cold transcript. That is why abuse of discretion is the standard here, and that's why the defendant's argument here fails. I'd also note that in the final jury instructions, I'm referring to page 1508, the final jury instructions included the Sixth Circuit pattern instruction reminding the jurors that when the district court struck evidence from the record, they are not to speculate about it, they are not to think about it in reaching their verdict. The next factor is bad faith. If your honors look at the record, particularly page 1384, the government reiterated that it had instructed all of its witnesses who were at that proffer not to talk about the homicide or Tyrone Conyers' death. So there was no bad faith on the part of the government. And I would also direct the court to page 1015. It's at the motions hearing before trial. It's two days before trial. That's an important page because on that page, the district court asked the government about this issue, what it was planning to do for the proffer statements, and the government explained that it had talked to all of its witnesses, including the homicide detectives, and had told those detectives not to talk about the murder. Defense counsel was then asked whether that was okay, and defense counsel said, and I think this is an exact quote, that's agreeable, Judge. So for defense counsel now on appeal to claim that it was bad faith for the government to call a homicide detective and the government should have known that by calling a homicide detective this would happen, ignores the fact that defense counsel understood we were calling a homicide detective and understood that two days before trial and thought it was just fine. So hindsight bias being what it may, it wasn't bad faith just to call a homicide detective. In looking at the transcript that follows this exchange between the homicide detective and defense counsel, one of the things that they agreed to do was to have a written motion filed later that could be responded to. Was there such a written motion? There was. There was a written motion filed, and actually the district court entered a written order. I don't have that record number, but there is a written order. All I want to know is if the defense lawyer followed up and you said he did. Yes. Yes, the defense counsel did file one. And also I think, Judge McKee, you raised this. It was a very small part of the evidence. We have admissions from the defendant where he admits to dealing in heroin. We have those toll records that match up the timing of the phone calls with the timing of the DEA agent's surveillance when the original heroin deal happens on October 28th. We have the surveillance itself, a number of DEA agents talking about how they saw, including one from a plane, how they saw these cars meet up and how they saw the heroin deal go down. And we also have the evidence found in Adams' house. That by itself is quite damning. It's a kilogram and a half of heroin. It includes a kilogram press, a scale, packaging material, $30,000 in cash, a drug ledger, and pretty much any indicia of drug trafficking you could imagine was in his house. So it was quite a strong case. And in the context of that evidence, it's unlikely that this stray remark made any difference whatsoever. I'm happy to answer any other questions about that issue. Otherwise, I'll move on to one more. On the proffer letter that defense counsel was discussing, by failing a proffer examination, on one of the central open issues in this investigation, Adams breached the plain language of that proffer letter by failing a polygraph examination. He breached one of the key provisions of that proffer letter. That proffer letter actually does not have a materiality gloss for the polygraph examination. As Your Honor stated, the language is quite clear. He either passes or he fails. And if he fails, no matter what it's on, then the government may use any of his statements against him at trial. There is no materiality gloss here, and this court has held many times that this is treated like a contract where you look at the plain language of the agreement. I'm not suggesting by this question there's anything wrong with this, but I'm trying to remember whether I had ever had a case where an up or down passing a polygraph would control whether a proffer could be used as evidence. I'm just curious, is this usual, unusual? I wouldn't say it's usual, but it does happen. We've cited four cases in our brief, three from the Fourth Circuit and one from the First Circuit, where it did happen. I guess I'm more interested in the Eastern District of Michigan. I don't think it happens routinely in the Eastern District of Michigan. We typically only ask someone to take a polygraph if we're concerned that they're lying. And here, if you look at the DEA report from the proffer, you see that the first set of questions are on the murder. We were very interested in this murder. And if you compare the date of the proffer, the date of the murder, and the date of the jail call, which actually came into the record at sentencing, that jail call between Adams and one of his associates talking about how Tyrone Conyers was still out there occurred seven days before Tyrone Conyers' murder. So we were quite focused on that murder. Indeed, there's testimony in the record. Judge Griffin, you may have asked about this. It's at page 1004. It was at an evidentiary hearing where we called the case agent, Agent McCormick, who testified that the DEA's investigation had extended to the murder, and that makes sense. It's the key witness in this drug investigation has been murdered, that the investigation had extended to the murder, and that's why they were asking Adams these questions about that murder. One other point, I think Judge Griffin, you asked about this as well, whether or not it was controverted that he had failed the polygraph. Actually, defense counsel admitted that he failed the polygraph. It's at page 997, and if you look at the district court's order, the district court actually relied on that admission that the defendant failed the polygraph. He's never actually claimed that he was testifying, or not testifying, but giving truthful responses during that polygraph or during the proffer. He's just said, well, you can't prove I was the murderer, and that may be correct, but that doesn't make those responses truthful. I'm happy to answer any further questions on that or any other issue. I think we're good. All right. Thank you. Ms. DeVos? Yeah. The first thing that I want to point out is that, in regards to the proffer agreement, the case law that is cited in both of our briefs, actually, is United States v. Fitch, 964 F. 2nd. 571. And it's even pointed out in the government's brief that the breach of the, I mean, it's contractual in nature, but that the breach itself must be material and substantial. And our argument is that it was not material and substantial as it related to Mr. Adams' investigation into the narcotics crimes. And that is why we. . . Well, let's assume that you're right about that. They're investigating him for a narcotics crime. Now, if, in fact, in the process of this, they conclude that he's orchestrated the murder of this guy, that would logically lead to federal charges, would they not? Yes. And, in fact, the federal charge for that is going to be then guideline calculated based on actual murder. Right. So to say that it's not material to the investigation, I just don't fundamentally understand that. You either have to convince us that the agreement only related to being truthful as to the drug dealing, which is refuted by the plain language of the agreement, or that for some other reason it doesn't matter. So try that one more time, will you, because I don't get it. Yeah. Our argument is just that because he hasn't been charged with any sort of involvement with the death of Mr. Conyers, so our argument is that his statements as it relates to the failing of the polygraph exam. . . But the agreement talks about investigation, not charges. Right? Right. And there's no question that he was being investigated for whatever role he played in the murder. He knew that, right? Yes. So why doesn't the plain language of the agreement control? I think it takes it too far, honestly. That's our argument, is that it stretches the agreement too far to say that his failure of the polygraph examination was a substantial and material brief of the Castigar Agreement as it relates to the admission of that evidence at his trial for drug crimes and possession of firearms. Had he been on trial for the death of Mr. Conyers, that would have been a completely different analysis because that would have been a substantial and material breach of that agreement as it relates to what he's being tried for. This, in our opinion, is a back-door way to get evidence in against Mr. Adams for something that he was not being tried for, and that is a violation of Mr. Adams' due process rights. All right. Thank you. Anything else? Not unless you have any other questions. Okay. You're arguing that what the polygraph found him untruthful for was not substantial and material? Right. How do we know what statement was untruthful in the polygraph? I mean, isn't the polygraph just that his testimony, or his statements, were untruthful? Does the polygraph, is it specific as to statements, or is it just that he's untruthful? It said deception detected as to the two lines of questioning that he was asked about, which only related to the death of Tyrone Conyers. At the polygraph, they didn't ask him anything about the drugs. Oh, okay. So you're saying that. I got you. Okay. Thank you. Anything else? Thank you. Thank you. We note that you've been appointed here under the Civil Justice Act, and we want to thank you for your representation, Mr. Adams, and your service to the court.